IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOE MOORE and )
KRISTY MOORE, )
           )
       Plaintiffs )
           )
v. )    CASE NO.
           )
JOHN SHEARON; )    **JURY TRIAL DEMANDED**
ANN DAVIS; )
STEPHEN BROCK; )
CORRY MCCARTNEY; )
JESSICA MIMS; )
MATT MOSLEY; )
ADAM MOORE; )
NIC BOLTON; )
MICHAEL RAY; )
EDWIN FREEMAN; )
CHRISTOPHER WHITTLE; )
MICHAEL BOWLES; )
TYLER SMITHERMAN; )
KEN HARMON; )
ASHLEY GARGUS; )
FREEMAN ELLISON; )
DARRELL BONE; )
TANNER GLASS; )
ALLEN SMITHERMAN; )
JAILER DOE #1; )
JAILER DOE #2; )
SOUTHERN HEALTH PARTNERS, )
INC.; and MISTY LECHANTRE; )
           )
       Defendants. )

**COMPLAINT**

Plaintiffs complains of defendants, stating as follows:

**Nature of the Action**

1.      This is a civil action brought by plaintiff Joe Moore against various Chilton County deputies and jailers and Clanton officers, including members of the Chilton County Sheriff's Office SWAT Team, for violations of plaintiffs' Fourth Amendment rights. Without a warrant and using excessive force, the SWAT Team assaulted the Moore home and Moore himself. Once at the jail, Chilton County jailers assaulted Moore, ignored his serious medical needs, and otherwise abused him. The abuse was aided by a nurse employed by the jail medical contractor, Southern Health Partners. Plaintiff Kristy Moore joins her husband as a plaintiff regarding the assault on their home.

**Jurisdiction and Venue**

2.      This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

3.      This judicial district is an appropriate venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the suit happened in this judicial district.

**Parties**

4.      Joe Moore is of legal age and a citizen and resident of the state of

Alabama.

5.    Kristy Moore is of legal age and a citizen and resident of the state of Alabama.

6.    Joe and Kristy Moore are married and are the owners of the home that was assaulted by the Chilton County Sheriff's Office SWAT Team.

7.    Defendant John Shearon is the Chilton County Sheriff and was at all relevant times.

8.    Defendant Ann Davis was the administrator of the Chilton County Jail at all relevant times.

9.    Defendants Stephen Brock, Corry McCartney, Jessica Mims, Matt Mosley, Adam Moore, and Nic Bolton were Chilton County deputies at all relevant times. Each was a member of the Chilton County Sheriff's Office SWAT Team.

10.    Defendants Michael Ray, Edwin Freeman, Christopher Whittle, Michael Bowles, Ashley Gargus, Tyler Smitherman, Ken Harmon, and Freeman Ellison were City of Clanton officers at all relevant times. Each was a member of the Chilton County Sheriff's Office SWAT Team.

11.    Collectively, the Chilton County and Clanton deputies/officers identified above are referred to as the SWAT Team defendants.

12.    Defendants Darrell Bone and Tanner Glass were City of Clanton officers

at all relevant times. They participated in Moore's arrest.

13.    Allen Smitherman was a jailer at the Chilton County Jail at all relevant times.

14.    Jailer Doe #1 was a jailer at the Chilton County Jail at all relevant times. More specifically, Jailer Doe #1 was a white male Moore estimates to have been in his late 20s and 5 feet 11 inches and 180 pounds.

15.     Jailer Doe #2 was a jailer at the Chilton County Jail at all relevant times. More specifically, Jailer Doe #2 was a black male Moore estimates to have been in his late 20s or early 30s and 6 feet 2 inches and well over 200 pounds.

16.    Defendant Southern Health Partners, Inc. (SHP) is a private for-profit corporation that was under a contractual obligation to provide medical care for inmates in the Chilton County Jail.

17.    Misty Lechantre was the SHP nurse on duty at the Chilton County Jail when Moore was abused as described below.

18.    All individual defendants are sued in their individual capacities only.

## Facts

### The SWAT Team Ignores Established Protocols and Assaults the Moore Home to Force Moore out to Make Way for an Event at the Church Across the Street Featuring Rick Burgess

19.    On or about October 29, 2023, around noon, Joe Moore was involved in

a domestic violence incident at the family home in Clanton, Alabama.

20.    Moore later pleaded guilty to a misdemeanor charge and does not dispute that there was probable cause for his arrest for domestic violence in the third degree.

21.    Moore's wife and daughter left the house, and the daughter called 911 to report the incident.

22.    For reasons not known to Moore, the SWAT Team was dispatched.

23.    All of the individual SWAT Team defendants were present at the Moore house.

24.    Moore's wife was present and informed multiple members of the SWAT Team that there were no firearms in the house except for an antique shotgun from the 1800s that did not fire that was Moore's great-grandfather's. She also informed them that there were no shells in the house.

25.    Either directly from Moore's wife or from other members of the SWAT Team, all members of the SWAT Team (and the sheriff) were informed regarding the fact that Moore did not have access to a useable firearm or other dangerous weapon.

26.    Moore was contacted by phone by a SWAT Team member and asked to come out of his house.

27.    Instead of following established protocols, the SWAT Team representative immediately started threatening Moore, vaguely telling Moore that he

could come out the easy way or the hard way or similar words to the same effect.

28.    Moore refused to come out.

29.    Moore refused because the SWAT Team defendants were pointing assault rifles at the front of his house and him, and he was afraid of being killed.

30.    After getting off the phone, Moore, via text, told his wife and daughter he was afraid the SWAT Team was going to kill him if he came out.

31.    Kristy Moore told the SWAT Team defendants that Moore was afraid they were going to kill him.

32.    The SWAT Team did nothing to alleviate Moore's concerns regarding his safety.

33.    The SWAT Team wanted confrontation.

34.    The SWAT Team and defendant Shearon were responding to concerns regarding a large program scheduled for later that day featuring Rick Burgess, an Alabama talk show host and author.

35.    The program, however, was still many hours away.

36.    Nevertheless, the SWAT Team and Shearon made the decision that Moore needed to be forced out immediately.

37.    So, instead of using either of the two negotiators on the SWAT Team who were trained for situations like this one, the SWAT Team decided to escalate.

38.    All SWAT Team defendants were aware there was no warrant.

39.    All SWAT Team defendants were aware Moore did not have access to any useable firearm or other dangerous weapon.

40.    All SWAT Team defendants were aware Moore was only accused of misdemeanor domestic violence.

41.    All SWAT Team defendants were aware that a decision was made to escalate for non-law enforcement purposes (the event scheduled for later that day).

42.    The decision to assault Moore's home without a warrant was approved by defendant Shearon with knowledge of all of the facts stated above.

43.    By pointing their rifles at Moore without any threat from Moore, these defendants used excessive force.

44.    This was only the beginning, however.

45.    Only 10 minutes after Moore told the SWAT Team representative he was not coming out and without any effort to warn Moore regarding the SWAT Team's intentions or negotiate with Moore, the SWAT Team:

•    surrounded Moore's house;

•    cut off the power to Moore's house by pulling the power meter out of the side of the Moore home; and

•    shot at least 12 CS/pepper canisters into Moore's house from all sides,

including 3 into Moore's bedroom, one of which struck Moore in the head (presumably on a ricochet since Moore is alive).

46.     Moore is lucky to be alive. Shells were fired at head level.

47.     Even if there had been a warrant or exigent circumstances, the use of 12 CS/pepper canisters was excessive.

48.     Also, there was no reason to damage Moore's power meter.

49.     The SWAT Team defendants did severe damage to Moore's home.

50.     Because of the physical damage to Moore's power meter, Moore's AC unit and multiple appliances were fried.

51.     The SWAT Team defendants shot out 8 windows and the sliding glass door to the backyard.

52.     Nearly everything was covered in residue from the CS/pepper canisters (walls, ceiling fans, doors, furniture, clothes).

53.     As a result, the Moores were displaced from their home for many months while Moore worked to make it liveable again.

54.     After regaining his senses from being knocked to the floor by the CS/pepper canister, Moore could not breathe or see. Moore's ears were ringing.

55.     Moore yelled that he was coming out, but no one responded.

56.     When Moore came out of his bedroom, he was afraid he would be shot.

57.    Seeing no one outside his bedroom, Moore went to the front of his house and looked through a window.

58.    Moore saw SWAT Team members pointing their guns at him.

59.    Moore then received a text from a friend who offered to meet Moore if he came outside.

60.    Moore said he would but expressed fear of being killed by the officers.

### The SWAT Team Defendants, Bone, and Glass Gratuitously Tackle Moore, and the SWAT Team Defendants Illegally Enter the Moore Home

61.    Once Moore stepped outside (dressed only in gym shorts and shoes), a SWAT Team member ordered Moore to put his hands up and to turn around and walk backwards.

62.    Moore complied.

63.    Moore was ordered to stop.

64.    Moore stopped.

65.    Moore was ordered to get on his knees.

66.    Moore said that he could not do that while holding his hands in the air.

67.    A few seconds later, multiple SWAT Team members and defendants Bone and Glass, running full speed, used a football-style tackle to take Moore violently to the concrete sidewalk and cuffed him.

68.     Each of the SWAT Team defendants either participated in the unnecessary tackling or failed to intervene to stop the tackling despite an opportunity to do so.

69.     Defendants struck Moore with serious force, causing Moore to scream in pain.

70.     Moore had recently had back surgery and a full hip replacement and has physical issues related to the assault that persist today.

71.     Defendants Bone and Glass then roughly threw Moore into the back of a patrol car.

72.     Moore requested medical assistance from defendant Bone due to the chemicals on his face and in his lungs.

73.     Defendant Bone ignored Moore's pleas.

74.     Bone was aware that Moore needed to be decontaminated from the chemical exposure but intentionally refused to decontaminate Moore.

75.     The SWAT Team defendants then raided Moore's home.

76.     At the time these defendants entered Moore's home, not only was there no warrant for Moore, there was not even a possible reason to enter, as Moore was in custody.

## Chilton County Jailers Assault Moore

77.    At the jail, Moore continued to request medical assistance from Bone.

78.    Bone then brought Moore into the booking area and turned over custody to Smitherman.

79.    Bone informed Smitherman regarding Moore's need for decontamination.

80.    It was also obvious from observing Moore that he required decontamination.

81.    Bone and Smitherman refused to decontaminate Moore despite knowing decontamination was required.

82.    Bone left.

83.    Smitherman continued to deny Moore medical assistance.

84.    Moore and Smitherman got into a heated exchange concerning the nature of Moore's charges (i.e., calling Moore a wife abuser) and Moore's requests for medical assistance.

85.    Smitherman was verbally abusive to Moore.

86.    This exchange took place while Moore was cuffed to a bar in the booking area.

87.    Smitherman then recruited two unidentified corrections officers, Jailer

Doe #1 and Jailer Doe #2, to put Moore in his place by beating him.

88.    Nurse Lechantre, whose office was in the booking area with the door open mere feet away, heard Smitherman recruit the officers and then saw and heard the beating and did nothing.

89.    Lechantre also heard Moore's pleas for decontamination and later observed his need for decontamination.

90.    Smitherman, Jailer Doe #1, and Jailer Doe #2 escorted Moore to a small room in the booking area.

91.    The beating began with Smitherman striking Moore with a closed fist to Moore's left temple.

92.    Jailer Doe #1 and Jailer Doe #2 then joined in.

93.    Moore was disoriented by the initial punch.

94.    Moore went back against the wall facing the open door.

95.    All three closed in and repeatedly punched Moore in the head, face, ribs, and stomach.

96.    When Moore tried to cover his head and face, someone would pull his arms down so Moore could not protect himself.

97.    Eventually, the three jailers slammed Moore to the floor and pressed their weight on him so that he could not breathe.

98.    Moore thought he was going to die.

99.    Just before Moore passed out, the jailers got off of Moore and dragged Moore out of the cell and placed him in a restraint chair.

100.    Moore, who had recently (less than 2 months before) had a heart attack and heart surgery, began having chest pains and begged for the officers and Lechantre for help.

101.    All four refused.

102.    Smitherman got in Moore's face, smiled, held up 4 fingers, and informed Moore he had the right to restrain Moore for 4 hours.

103.    Lechantre was required to approve using the restraint chair and did so.

104.    Lechantre approved the officers' use of the restraint chair to help them further punish Moore (for the charges and his speech).

105.    The officers ordered, and Lechantre approved, that Moore would not receive any breaks, even to use the restroom.

106.    Lechantre watched the officers tighten down the restraint chair straps excessively to cause Moore additional suffering.

107.    The restraint chair policy at the jail, approved by defendant Shearon, permitted use of the chair for punishment and without breaks for as much as 4 hours at a time.

108.    Moore was placed in the restraint chair even though he was not physically resisting.

109.    Moore was only guilty of verbally protesting the refusal to decontaminate him and responding to Smitherman's verbal abuse regarding the charges.

110.    Lechantre approved the use of the restraint chair even though Lechantre could see Moore was in need of medical care and even though it was obvious the restraint chair was excessive and was being used by the officers for an improper purpose (to punish Moore for the charges and to retaliate against Moore for his speech).

111.    During Moore's first hour of being in the restraint chair, Shearon and Davis were informed of the situation with Moore but refused to take action.

112.    The officers, with Lechantre's knowledge and approval, decided that even 4 hours without a break was not enough.

113.    Moore was kept in the restraint chair for roughly 6 hours.

114.    After putting Moore in the chair, the officers then wheeled Moore through a door and into an area where Moore (in only a pair of shorts) was exposed to cold air every time an officer went through the door.

115.    Moore continued to have chest pains until he lost consciousness.

116.   All four observed but ignored Moore.

117.   All four could see that Moore was not conscious.

118.   All four could see that Moore was covered in chemical residue and obviously needed decontamination.

119.   After Moore did not regain consciousness on his own, Lechantre used smelling salts to rouse Moore.

120.   Moore then begged Lechantre and the three officers for help.

121.   Lechantre told Moore she could not do anything for him.

122.   Lechantre did not check Moore's vital signs or otherwise do anything to treat or assess Moore.

123.   Lechantre and the officers just left Moore and went back inside.

124.   Roughly six hours later, the three officers wheeled Moore back inside and got Moore out of the restraint chair and took him back to the room in which they had beaten Moore.

125.   There, Smitherman had Moore strip, spread his butt cheeks, and cough.

126.   Smitherman then started making sexual comments in order to further humiliate Moore, including that he could tell Moore had taken it up the ass and that Moore was a faggot.

127.   Moore feared he was about to be sexually assaulted.

128.   To punish Moore even more, the officers put Moore on suicide watch, placing him in a holding cell without a blanket or a toilet or access to water.

129.   Moore was denied meals.

130.   Moore was only provided a suicide gown and a thin mattress.

131.   When Moore tried to lie on the bench, Smitherman would bang the door and make him lie in the floor.

132.   So Moore was forced to lay in the floor of the cell, freezing cold, in his own blood and piss.

133.   Lechantre approved putting Moore on suicide watch.

134.   Lechantre's conduct regarding the restraint chair, the lack of medical care, and putting Moore on suicide watch was contrary to the standard of care for a nurse.

135.   Moore remained in the holding cell until around 11:30 p.m. when an officer on the next shift allowed Moore out and permitted him to clean up and get a shower.

136.   The officer had fire department personnel check Moore.

137.   Ultimately, Moore was sent to the hospital due to his heart symptoms, dangerously high blood pressure, and his injuries.

138.   As a result of how Moore was treated in the jail, in addition to his

physical injuries, Moore has PTSD and related psychiatric issues.

### The Excessive Actions of the SWAT Team Are Part of a Pattern

139.   The abuse of Moore by the SWAT Team defendants is part of a pattern and considered acceptable by the sheriff.

140.   In April 2022, roughly 18 months before this incident, Shearon reviewed an incident in which the SWAT Team brutally assaulted Jason Masingo while arresting Masingo as part of a prostitution sting.

141.   Multiple SWAT Team members punched Masingo in the face, causing an orbital fracture to the right side of Masingo's face.

142.   The assault was recorded on video.

143.   Shearon approved the incident and refused to take disciplinary action against any of the involved SWAT Team members.

144.   Moreover, Shearon was aware of other incidents in which the SWAT Team and his deputies used excessive force from incident reports; from verbal reports made by officers, arrestees and their family members, and others; and from other sources.

### The Abuse Suffered by Moore at the Jail Is Part of a Pattern

145.   The abuse of Moore at the jail is part of a pattern and considered acceptable by the sheriff and jail administrator.

146.    Shearon and Davis were informed of the incident and reviewed the video of the incident.

147.    Despite the gross abuses shown on the video, the jail administrator (Davis) and the sheriff (Shearon) did not terminate the officers.

148.    Despite the gross abuses shown on the video, the jail administrator (Davis) and the sheriff (Shearon) did not refer the officers for criminal charges.

149.    This attitude toward incidents of excessive force was standard under the administration of defendants at the jail and in the field (as discussed above).

150.    Corrections officers routinely assaulted inmates without any fear of recourse.

151.    The violence at the jail by corrections officers was encouraged by the words and actions of defendants.

152.    These defendants failed and refused to take action to stop the pattern of inmate abuse at the jail.

153.    Defendants were aware of the pattern of abuse from reviewing jail logs and incident reports, video of incidents, and grievances filed by inmates; from verbal reports made by officers, inmates and their family members, and others; and from other sources.

### Count I - 42 U.S.C. § 1983 - Excessive Force - Assault Rifles - SWAT Team Defendants and Shearon

154.   As explained above, the identified individual defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, pointed their rifles at Moore when he was not a threat. These individual defendants did thereby deprive Moore of his rights under the Fourth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983. Specifically, they violated Moore's right to be free from excessive force.

155.   Shearon is liable because he authorized the constitutional violation and because he established a custom or policy that was the moving force behind the constitutional violation.

156.   As a result of the conduct of defendants, Moore suffered emotional injuries and damages.

### Count II - 42 U.S.C. § 1983 - Excessive Force - Home Assault - SWAT Team Defendants and Shearon

157.   As explained above, the identified individual defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, without a warrant or exigent circumstances, shot CS/pepper canisters into plaintiff's home, authorized the assault, or failed to intervene to stop the assault despite an opportunity to do so. These individual defendants did thereby deprive Moore of his rights under the Fourth

Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983. Specifically, they violated Moore's right to be free from excessive force.

158.   Shearon is liable because he authorized the constitutional violation and because he established a custom or policy that was the moving force behind the constitutional violation.

159.   As a result of the conduct of defendants, Moore suffered physical and emotional injuries and damages.

### Count III - 42 U.S.C. § 1983 - Unlawful Search - Home Assault - Property Invasion and Damage - SWAT Team Defendants and Shearon

160.   As explained above, the identified individual defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, without a warrant or exigent circumstances, entered onto the property of Moore and Kristy Moore and damaged their home by shooting CS/pepper canisters and damaging the power meter, authorized the entry and damage, or failed to intervene to prevent the entry and damage despite an opportunity to do so. These individual defendants did thereby deprive Moore and Kristy Moore of their rights under the Fourth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983. Specifically, they violated the Moores' right to be free from unlawful searches.

161.   Shearon is liable because he authorized the constitutional violation and

because he established a custom or policy that was the moving force behind the constitutional violation.

162.    As a result of the conduct of defendants, the Moores suffered economic and emotional injuries and damages.

## Count IV - 42 U.S.C. § 1983 - Unlawful Search - Entry after Arrest - SWAT Team Defendants and Shearon

163.    As explained above, the identified individual defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, entered onto the property of Moore and Kristy Moore after Moore had been arrested, authorized the entry, or failed to intervene to prevent the entry despite an opportunity to do so. These individual defendants did thereby deprive Moore and Kristy Moore of their rights under the Fourth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983. Specifically, they violated the Moores' right to be free from unlawful searches.

164.    Shearon is liable because he authorized the constitutional violation and because he established a custom or policy that was the moving force behind the constitutional violation.

165.    As a result of the conduct of defendants, the Moores suffered emotional injuries and damages.

### Count V - 42 U.S.C. § 1983 - Excessive Force - Tackle - the SWAT Team Defendants, Bone, Tanner, and Shearon

166. As explained above, the identified individual defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, assaulted and battered Moore without justification or failed to intervene despite an opportunity to do so. These individual defendants did thereby deprive Moore of his rights under the Fourth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983. Specifically, they violated Moore's right to be free from excessive force.

167. Shearon is liable because he authorized the constitutional violation and because he established a custom or policy that was the moving force behind the constitutional violation.

168. As a result of the conduct of defendants, Moore suffered physical and emotional injuries and damages.

### Count VI - 42 U.S.C. § 1983 - Excessive Force - Beating - Smitherman, Jailer Doe #1, Jailer Doe #2, Lechantre, and Shearon

169. As explained above, the identified individual defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, assaulted and battered Moore without justification or failed to intervene despite an opportunity to do so. These individual defendants did thereby deprive Moore of his rights under the Fourth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

Specifically, they violated Moore's right to be free from excessive force.

170.   Shearon and Davis are liable because they established a custom or policy that was the moving force behind the constitutional violation.

171.   As a result of the conduct of defendants, Moore suffered physical and emotional injuries and damages.

### Count VII - 42 U.S.C. § 1983 - Excessive Force - Restraint Chair - Smitherman, Jailer Doe #1, Jailer Doe #2, Lechantre, and Shearon

172.   As explained above, the identified individual defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, without justification, restrained Moore in a chair with excessively tight straps for roughly 6 hours exposed to cold air or failed to intervene despite an opportunity to do so. These individual defendants did thereby deprive Moore of his rights under the Fourth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983. Specifically, they violated Moore's right to be free from excessive force.

173.   Shearon and Davis are liable because they authorized the constitutional violation and because they established a custom or policy that was the moving force behind the constitutional violation.

174.   As a result of the conduct of defendants, Moore suffered physical and emotional injuries and damages.

23

## Count VIII - 42 U.S.C. § 1983 - Deliberate Indifference - Bone, Smitherman, Jailer Doe #1, Jailer Doe #2, Lechantre, and Shearon

175.   As explained above, the identified individual defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, were deliberately indifferent to Moore's serious medical needs following his exposure to various chemicals and in response to Moore's serious heart symptoms and losing consciousness. These individual defendants did thereby deprive Moore of his rights under the Eighth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

176.   Shearon and Davis are liable because they established a custom or policy that was the moving force behind the constitutional violation.

177.   As a result of the conduct of defendants, Moore suffered physical and emotional injuries and damages.

## Count IX - 42 U.S.C. § 1983 - First Amendment - Smitherman, Jailer Doe #1, Jailer Doe #2, Lechantre, and Shearon

178.   As explained above, the identified individual defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, in retaliation for Moore's protected speech (i.e., his requests for medical care and opposition to being beaten and sexually humiliated) beat Moore and put him in a restraint chair and then on suicide watch and otherwise subjected him to extreme conditions as punishment or failed to intervene despite an opportunity to do so. These individual defendants did

thereby deprive Moore of his rights under the First Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

179.    Shearon and Davis are liable because they established a custom or policy that was the moving force behind the constitutional violation.

180.    As a result of the conduct of defendants, Moore suffered physical and emotional injuries and damages.

### Count X - 42 U.S.C. § 1983 - Due Process - Smitherman, Jailer Doe #1, Jailer Doe #2, Lechantre, and Shearon

181.    As explained above, the identified individual defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, beat Moore and put him in a restraint chair and then put him on suicide watch, making him lie in his own blood and piss and denying him access to a toilet or water, and otherwise subjected him to extreme conditions as punishment or failed to intervene despite an opportunity to do so. These individual defendants did thereby deprive Moore of his rights under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

182.    Shearon and Davis are liable because they established a custom or policy that was the moving force behind the constitutional violation.

183.    As a result of the conduct of defendants, Moore suffered physical and emotional injuries and damages.

## Count XI - Medical Negligence (AMLA) - SHP and Lechantre

184.    As explained above, defendant Lechantre failed to meet the standard of care for similarly situated healthcare providers regarding plaintiffs care and condition, including failing to promptly send plaintiff to the hospital.

185.    Each of these failures resulted in plaintiff experiencing unnecessary suffering.

186.    SHP nurses, aids, charge nurses, physicians, and other care providers, including the named individual defendant, acted as employees or agents of SHP, and within the line and scope of their employment or agency and/or for the benefit of SHP. Therefore, SHP is liable under agency principles.

187.    A reasonably prudent healthcare provider to inmates at a correctional facility such as SHP, operating under the same or similar conditions, would not have failed to provide the care listed above. Each of the foregoing acts and patterns of negligence on the part of these defendants, operating separately or in combination with other defendants jointly and cumulatively, proximately contributed to cause plaintiff's suffering and permanent disability.

188.    As a result of the conduct of defendants, Moore suffered physical and emotional injuries and damages.

## Other Matters

189.    All conditions precedent to the bringing of this suit have occurred.

## Relief Sought

190.    As relief, plaintiffs seeks the following:

a.    That plaintiffs be awarded such compensatory damages as a jury shall determine from the evidence plaintiffs are entitled to recover;

b.    That plaintiffs be awarded against the individual defendants and SHP such punitive damages as a jury shall determine from the evidence plaintiffs are entitled to recover;

c.    That plaintiffs be awarded prejudgment and postjudgment interest at the highest rates allowed by law;

d.    That plaintiffs be awarded the costs of this action, reasonable attorney's fees, and reasonable expert witness fees;

e.    That plaintiffs be awarded appropriate declaratory and injunctive relief; and

f.    That plaintiffs be awarded such other and further relief to which plaintiffs are justly entitled.

**Dated: October 28, 2025.**

Respectfully submitted,


s/ Henry F. (Hank) Sherrod III
Henry F. (Hank) Sherrod III
No. ASB-1200-D63H
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, Alabama 35630
Phone: 256-764-4141
Fax: 877-684-0802
Email: hank@alcivilrights.com

Attorney for Plaintiff

## Jury Demand

Plaintiff requests a trial by jury.

s/ Henry F. (Hank) Sherrod III
Henry F. (Hank) Sherrod III